UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HOBERT FREEL TACKETT, et al.,

           Plaintiffs,                      Case No. 2:07-cv-126
                                                JUDGE GREGORY L. FROST
      v.                                Magistrate Judge Norah McCann King

M&G POLYMERS USA, LLC, et al.,

           Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion to dismiss (Doc. # 19), Plaintiffs' memoranda in opposition (Docs. # 34, 35), Defendant's reply memorandum (Doc. # 36), and Plaintiffs' sur-replies (Docs. # 61, 62). For the reasons that follow, the Court finds the motion to dismiss well taken.

## I.  Background

This is a class action case in which the putative class–retirees, their spouses, and surviving spouses or other dependents of individuals who worked for the named defendant company–assert that although they have a right to lifetime retiree health care benefits, the company is requiring them to pay for those benefits in violation of various collective bargaining agreement ("CBA") provisions. Plaintiffs Hobert Freel Tackett, Woodrow K. Pyles, and Harland B. Conley are all Ohio residents and retirees from the Point Pleasant Polyester Plant in Apple Grove, West Virginia. They and similarly situated retirees belong to a labor union, Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("USW"), which represented (or at least

1

one of its predecessor unions represented) them as employees of Defendant M&G Polymers

USA, LLC ("M&G") (which bought the plant in 2000), or one of its predecessor companies,

such as the Shell Chemical Company (which owned the plant from 1992 to 2000) and The

Goodyear Tire & Rubber Company (which owned the plant until 1992). Plaintiffs assert that

various CBA provisions provide lifetime retiree health care benefits.

Plaintiffs allege that on or about January 1, 2007, however, Defendant M&G unilaterally

modified the health care benefits by shifting a large part of the health care costs onto the putative

class members. The other named defendants are M&G-sponsored health plans through which

the putative class members receive health care benefits: the M&G Comprehensive Medical

Benefits Program for Employees and Their Dependents, the M&G Catastrophic Medical Plan,

the M&G Medical Necessity Benefits Program of Hospital, Surgical, Medical, and Prescription

Drug Benefits for Employees and Their Dependents, and the M&G Major Medical Benefits Plan.

Plaintiffs filed the instant action on behalf of the named retirees and their surviving

spouses or dependents, as well as other similarly situated retirees and their surviving spouses or

dependents, on February 9, 2007. (Doc. # 1.) Via their amended complaint, Plaintiffs assert

three counts: violation of labor agreements, actionable under Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (Count I); violation of employee

welfare benefit plan, actionable under Sections 502(a)(1)(B) and (a)(3) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)

(Count II); and breach of fiduciary duty under Section 502(a)(3) of ERISA, 29 U.S.C. §

1132(a)(3) (Count III). (Doc. # 14 ¶¶ 26-31.)

On May 15, 2007, Defendants filed a motion to dismiss the amended class action

complaint.  (Doc. # 19.)  In connection with that briefing, Plaintiffs filed a joint motion for leave

to file two sur-reply memoranda (Doc. # 42), which the Court granted (Doc. # 60).  The parties

have therefore completed briefing on the motion to dismiss, which is now ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter

jurisdiction.  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of

proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ."  *Weaver v. Univ. of

Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l.

Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  *See also Rapier v. Union City Non-Ferrous,

Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance

Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d

913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of

the evidence, the existence of federal subject matter jurisdiction").  Moreover, this Court may

resolve any factual disputes when adjudicating a defendant's jurisdictional challenge.  *See Moir*,

895 F.2d at 269.

In contrast to Rule 12(b)(1), Rule 12(b)(6) requires an assessment of whether Plaintiffs

have set forth claims upon which this Court may grant relief.  For the purpose of the analysis

under Rule 12(b)(6), this Court must construe the amended complaint in favor of Plaintiffs,

accept the factual allegations contained in the amended complaint as true, and determine whether

Plaintiffs' allegations plausibly suggest viable claims.  *See NicSand, Inc. v. 3M Co.*, ___ F.3d

3

___, 2007 WL 3010426, at *12 (6th Cir. Oct. 17, 2007); *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *cf. Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir. 2002). In other words, "a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *The Limited, Inc. v. PDQ Transit, Inc*., 160 F. Supp. 2d 843, 843 (S.D. Ohio 2001) (citing *Rauch v. Day & Night Mfg. Corp*., 576 F.2d 697, 702 (6th Cir. 1978)).

### B. Analysis

Relying on Rule 12(b)(1), Defendants first argue that the Court should dismiss Plaintiffs' § 301 claim constituting Count I because the claim fails to present a breach of the CBA. Rather, Defendants assert, they have simply complied with the CBA and ancillary agreement provisions that permit the implementation of above-cap contributions. Defendants then argue that dismissal is also warranted under Rule 12(b)(1) because the National Labor Relations Board ("NLRB") has primary jurisdiction over the claim, with the caps constituting an agreed-upon mandatory subject of bargaining. Finally, Defendants posit that dismissal is warranted under Rule 12(b)(6) because the limitations on the health benefits, including caps on employer contributions, were the result of collective bargaining and disclosed in the 1991 summary plan description.

The nature of Defendants' initial challenge to this Court's jurisdiction over Count I means that the Court can look outside the factual allegations of the pleadings. Were this a facial attack on the amended complaint under Rule 12(b)(1), the Court would necessarily accept the factual allegations of the amended complaint as true. *See U.S. v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999) (explaining that in "a facial attack on subject matter jurisdiction, [a

court] would take the allegations in the complaint as true and construe them in the light most

favorable to the non-moving party"); s*ee also RMI Titanium Co. v. Westinghouse Electric Corp.*,

78 F.3d 1125, 1134 (6th Cir. 1996). In the absence of a facial attack on the amended complaint,

however, this Court need not accept that pleading's factual allegations as true. *See RMI*

*Titanium Co.*, 78 F.3d at 1134 (explaining that when a Rule 12(b)(1) motion attacks the

existence of subject matter jurisdiction, apart from the pleadings, a court does not accept the

pleadings as true but weighs the evidence as needed to determine jurisdiction); *Wright v. United*

*States*, 82 F.3d 419, 1996 WL 172119, at *4 (6th Cir. 1996) (unpublished table decision)

("Regardless of what the complaint says, the court has no subject matter jurisdiction if the

factual predicates of subject matter jurisdiction do not exist."). Thus, the Court can consider

evidence extrinsic to the pleadings without converting the matter into a summary judgment

proceeding. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to

a pleading is a part thereof for all purposes."); *Nichols*, 318 F.3d at 677; *Rogers v. Stratton*

*Industries, Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986) (supplementation of record in Rule

12(b)(1) challenge does not convert motion to dismiss into a summary judgment motion).

Consideration of such evidence–which has been properly authenticated–defeats

Plaintiffs' position.[1] Defendants argue that Letter of Understanding 2003-6, dated August 9,

2005, and made part of the current CBA (which controls the period from August 9, 2005 through

November 6, 2008), permits implementation of above-cap contributions. (Doc. # 19-9, Ex. 8, at

---

[1] The Court assumes for the sake of argument that a Rule 12(b)(1) inquiry is appropriate here. *See Gentek Bldg. Prods, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007) (reasoning that when a factual attack on jurisdiction implicates an element of the cause of action, a district court should conclude that jurisdiction exists and proceed to address a direct attack on the merits of the plaintiff's claim.) .

6-7.)  This letter indeed contemplates caps on employer contributions to retiree health benefits and provides that "premium cost sharing charged to retirees will be based in the amount by which total cost for all retiree insurances (medical, life, etc.) exceed the caps set forth in Letter H dated January 1, 2001."  (Doc. # 19-9, Ex. 8, at 6.)  The letter continues to state that retirees would not be required to contribute to their premiums until January 1, 2006, and that the retiree premium contribution rates would become effective on that date.  (Doc. # 19-9, Ex. 8, at 6.)

Defendants additionally direct this Court to a May 15, 1991 letter ("Letter G") incorporated into the CBA effective May 15, 1991.  Letter G provides both that a specific age-based cap limitation exists on the employer contributions for each employee who retires on or after May 1, 1991, and that "[i]f the average annual cost of health care benefits for [each group of retirees outlined in the letter] exceeds the specified amount, the cost in excess of that amount shall be allocated evenly to all retired employees (including surviving spouses) in such group." (Doc. # 19-3, Ex. 2, at 8.)  The letter, signed by a representative of each side, then provides that "no retired employee or surviving spouse shall be obligated to contribute for such excess health care cost until July 1, 1997."   (Doc. # 19-3, Ex. 2, at 8.)

Plaintiffs attack Defendants' reliance on this authenticated letter and similar documents–cap letters dated July 20, 1994, May 9, 1997, and January 1, 2001 (Docs. # 19-3, 19-4, 19-5)–on the grounds that they all relate to *Goodyear* retirees and that Defendants have failed to show that the *Goodyear* documents apply to Shell and M&G employees who retired from the Apple Grove plant after it was sold by Goodyear to Shell in 1992, and then sold by Shell to M&G in 2000.  In fact, in its sur-reply, Plaintiff USW even states that "M&G argues that Shell's assumption of the Goodyear CBA and P&I agreement necessarily included the 1991 Goodyear

6

'cap' letter, but presents *no evidence* in support of that argument."  (Doc. # 61, at 4 n.2.)

The Court has struggled with Plaintiffs' premise because it is so curious that the Court has been concerned that it is not reading Plaintiffs' briefing correctly.  There is ultimately no doubt, however, that Plaintiffs are attempting in this specific context to evade the very agreements into which they voluntarily entered.  There is also no doubt that, in contrast to Plaintiffs' contention, Defendants have presented ample evidence supporting application of the cap letters.

The first cap letter originated in 1991.  The declaration of James Kruse, the retired Goodyear employee responsible for human resources and labor relations (including collective bargaining over retiree benefits), indicates that the May 15, 1991 Letter G was part of the agreement incorporated into the Master P&I Agreement and that it applied to the Apple Grove plant.  The declaration also explains that Shell assumed the agreement obligations as a successor as part of its 1992 purchase of the plant.  (Doc. # 37, Ex. 12.)

The declaration of Dale Wunder, Shell's Vice President of Human Resources who was assigned to the Apple Grove plant, also indicates that Shell assumed the existing agreement obligations as a successor.  Wunder additionally indicates that although the parties agreed not to change the agreements from using "Goodyear" to using "Shell," the parties agreed that the 1994 and 1997 Goodyear agreements were applicable to the Apple Grove plant.  Notably, Wunder also indicates that Shell and the union specifically agreed that the July 20, 1994 Letter G to the 1994 P&I Agreement and the May 9, 1997 Letter H to the 1997 P&I Agreement applied to retirees from the Apple Grove plant.  (Doc. # 37, Ex. 13.)  Thus, the caps remained applicable.

In 2000, Shell sold the Apple Grove plant to M&G.  The declaration of Kimm Korber,

M&G's Human Resources Director, indicates that M&G assumed the preexisting CBA and its obligations as a successor to Shell, that the union asserted in negotiations that the January 1, 2001 Letter H applied, and that the eventual 2005-08 CBA included the Letter of Understanding 2003-6 that tracks and reaffirms the caps applicable to all preexisting retirees back to the original May 15, 1991 Letter G.  Moreover, the declaration specifically states that the union never disputed that the retiree contributions could be collected in the form of monthly contributions. (Doc. # 37, Ex. 14.)

These declarations and their attachments thus present an unbroken chain of cap letter applicability.  Plaintiffs, overlooking the union's assertion during negotiations with M&G that the 2001 cap-supporting Letter H applied, argue that M&G admitted the caps did not apply.  The declaration of David Dick, an attorney who represented M&G in the 2000 negotiations, clarifies that M&G's October 17, 2000 communication denying applicability of the 1994 and 1997 letters was the result of a lack of understanding on his part of the history of cap incorporation and that the denial did not modify the existing agreements and party obligations.  (Doc. # 37, Ex, 15.)

The text of Letter of Understanding 2003-6 unambiguously supports the unbroken application of caps to retirees (including preexisting retirees).  That document explicitly references the prior 2001 cap letter and provides that "[r]etiree benefits" means "benefits for the Company's preexisting retirees."  (Doc. # 19-9, at 6.)

In contrast to this evidence of continued application of the caps, Plaintiffs present an argument based on inferences, selectively pointing to documents such as M&G's October 17, 2000 negotiation memorandum, while sidestepping the evidence that placed that document in context and evidence that the caps have long and continuously applied.  Four additional points

8

warrant fuller discussion.

First, Plaintiffs have unsuccessfully attempted to change the context of the argument.  As previously noted, Defendants' Rule 12(b)(1) motion to dismiss is a factual, not facial, challenge to jurisdiction.  Defendants in fact sought to emphasize this point, stating in the memorandum in support of their motion the applicable standard and scope of review for "[w]here, as here, a party factually challenges a court's jurisdiction to hear a claim . . . ."  (Doc. # 19, at 10 n.5.)  But in an effort to defeat judicial consideration of the substance of Defendants' declarations, Plaintiffs attempt to recast the nature of the Rule 12(b)(1) attack as a facial attack on the amended complaint.  *See* Doc. # 61, at 5 (Plaintiff USW argues that "alleged conversations cannot support a Rule 12(b)(1) or (6) motion, which is based on the assertion that the complaint fails to state a claim and that the Court lacks jurisdiction."); Doc. # 62, at 1 ("Plaintiff Retirees adopt the arguments set forth in Plaintiff USW's surreply regarding Plaintiffs' LMRA Section 301 claims.").  Because Defendants assert a factual, not facial, attack, the Court can consider and even weigh the substance of the declarations in the Rule 12(b)(1) context, without proceeding to Rule 12(b)(6) and a subsequent conversion to a Rule 56 proceeding.  *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) ("A Rule 12(b)(1) motion . . . can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.").

Second, the October 17, 2000 M&G memorandum (itself extrinsic evidence) cannot trump the parties' agreement reached after that (ill-informed) negotiating position; the subsequent agreement reached by the parties reaffirmed the applicability of the caps.  Thus, there is no modification as Plaintiffs assert, but only a validation of the preexisting cap agreements and

obligations.

Third, the M&G purchase agreement for the Apple Grove plant fails to defeat the applicability of the cap letters. Even if the purchase agreement excluded the cap letter obligations, this does not speak to the pre-purchase obligations of the pre-2000 retirees or the pre-purchase application of caps. And even if the purchase agreement did not include the cap provisions, the parties' subsequent dealings as outlined in the negotiations reaffirmed the application of the caps to preexisting and subsequent retirees. In other words, there *might* have been an argument that M&G meant to exclude these benefit obligations via the purchase agreement, but the union and the company then reaffirmed the cap and benefit obligations so as to defeat the continued vitality of that argument.

Fourth, the premise of Plaintiffs' claim, that termination of benefits for retirees who fail to contribute, similarly fails because termination does not present a breach. For the period of time at issue, there are no guaranteed benefits absent retiree contributions. This means the asserted terminations do not breach the CBAs.

The end result is that Plaintiffs have failed to meet their burden of proving that jurisdiction exists. Count I of the amended complaint targets "specified lifetime health care benefits," and the specified benefits include sharing costs. The retirees are entitled to an employer contribution toward health benefits, but they must pay premium contributions; there is simply no contractual right to contribution-free health benefits, even if agreements have long deferred the eventual collection of the retirees' shares. The company's right to terminate benefits for retirees' failure to contribute is implicit.

Therefore, the evidence before this Court indicates that because the caps scheme has

10

continued to apply, Defendants are correct in asserting that there is no breach of the CBA.

Absent a breach by Defendants, this Court lacks jurisdiction over the § 301 claim constituting

Count I of the amended complaint.  *See United Gov't Sec. Officers of Am. v. Akal Sec., Inc.*, 475

F. Supp. 2d 732, (S.D. Ohio 2006) (holding that there is no viable § 301 claim where there is no

breach of a CBA); *cf. Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 578 (6th Cir. 2004) ("Jurisdiction

in a § 301 claim is premised upon the existence of a contract, which an employer subsequently

breaches.  Section 301 opens the federal courthouse only to '[s]uits for violation of contracts.' "

(quoting 29 U.S.C. § 185(a))).

But even assuming that the Court should indeed presume jurisdiction and proceed under

Rule 12(b)(6) as Plaintiffs suggest, dismissal is still warranted.  Because much of this analysis in

regard to the Rule 12(b)(6) attack on the Count I § 301 claim involves the same analysis related

to Plaintiffs' ERISA claims in Counts II and III, the Court shall proceed to discuss the Rule

12(b)(6) inquiry together.

Defendants move for dismissal of these counts pursuant to Rule 12(b)(6), for failure to

state a claim upon which this Court can grant relief.  Defendants argue that the Court cannot

grant relief on Count I because there is no breach, given that retirees have no right to lifetime

health benefits without mandated retiree contributions.  Defendants then posit that dismissal of

the ERISA Section 502(a)(1)(B) component of Count II is warranted because the incorporated

letters referenced above provide that the issue of retiree health benefits is a mandatory subject of

bargaining, which indicates that the retirees' health benefits were and are not vested as lifetime

benefits as Plaintiffs contend.  Defendants' rationale here is that because 29 U.S.C. §

1132(a)(1)(B) only permits a plan participant "to recover benefits due to him under the terms of

his plan," the retirees cannot proceed under this ERISA provision because the parties' agreed only to retiree medical benefits contingent on retiree contributions. Thus, Defendants reason, in the absence of a retiree contribution, there is no right to an employer contribution. The analysis is that no retiree contribution equals no benefit due, which means there is no due benefit to recover under § 1132(a)(1)(B).

Defendants also seek a Rule 12(b)(6) dismissal of the ERISA Section 502(a)(3) component of Count II and the entirety of Count III essentially on the grounds that the section is unavailable because ERISA Section 502(a)(1)(B) already provides a remedy. Plaintiffs argue that this is an incorrect construction of both ERISA and their amended complaint and that there have been actionable fiduciary misrepresentations.

A medical benefit plan is a type of welfare benefit plan, which means that it is not subject to automatic or mandatory vesting under ERISA, but can be vested by agreement of the parties. *Bauer*, 368 F.3d at 584. What proves unusual in this case is that the context of this Rule 12(b)(6) aspect of the motion to dismiss precludes this Court from considering the letter agreements of the parties here, even if the Court could and did consider this material in regard to the dismissal of Count I.

In addressing above the motion to dismiss Count I, this Court conducted a Rule 12(b)(1) factual inquiry that permitted and necessitated review of extrinsic evidence (i.e., Defendants' declarations, which presented the cap letters as applicable to the dispute). As Plaintiffs correctly note in their briefing, however, a Rule 12(b)(6) inquiry mandates a different approach. Under Rule 12(b)(6), the Court cannot engage in such a factual inquiry, but must accept the factual allegations contained in Plaintiffs' amended complaint as true and then decide whether these

facts present a plausible claim to relief.  Plaintiffs assert that the Rule 12(b)(6) inquiry means that the Court must necessarily accept that the plan documents and CBAs confer lifetime health care benefits on the retirees and that the plans and CBAs preclude termination by Defendants. Thus, Plaintiffs conclude, the pleading presents a potentially viable claim under Counts I and II.

Defendants indeed attack Counts I and II by relying on the letter agreements, which as discussed above rely on the declarations for validation.  Although the Court can consider documents referenced in the amended complaint, the pleading generally makes vague references to the parties' agreements without specifying what constitutes the bulk of the agreements; it is only through the extrinsic evidence that the Court was persuaded above that the letters mattered. Defendants also rely on summary plan descriptions, which do not grow out of the pleading but are extrinsic to the amended complaint.  To consider this material, the Court would have to convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

Rule 12 permits such conversion, stating:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  What this means is that generally a court must provide the parties notice of its intent to convert, although under various circumstances notice is not always required.  *See Cunningham v. Osram Sylvania, Inc.*, 221 F. App'x 420 (6th Cir. 2007) (concession of both parties in Rule 12(b)(6) briefing that conversion is appropriate negates need for notice of intent to  convert).

Weighing against conversion and consequent consideration of Defendants' extrinsic

materials is the fact that Plaintiffs have raised a demand to conduct discovery on the alleged

fiduciary misrepresentations.  (Doc. # 62, at 3 ("Plaintiffs are entitled, at a minimum, to conduct

discovery on this claim.").)  The Court in its discretion therefore declines to consider material

extrinsic to the pleadings in regard to the motion to dismiss Counts I through III, which means

that conversion is not necessary.  Proceeding to address the motion within the confines of a Rule

12(b)(6) inquiry, then, the Court nonetheless concludes that dismissal is warranted.

The aforementioned *Cunningham v. Osram Sylvania, Inc.* notably informs this

conclusion.  In *Cunningham*, the Sixth Circuit described the relevant facts of that similar § 301

case as follows:

> The plaintiffs are former Sylvania employees who retired in 1998 and
> 2002.  They brought this action on the theory that Sylvania's announcement in
> 2003 that its contribution to their medical insurance premiums would henceforth
> be "capped" at scheduled amounts constituted a unilateral modification of non-
> modifiable lifetime benefits granted to retirees under union contracts between
> their union, UAW Local 1608, and Sylvania.  The company's action came in the
> wake of provisions in collective bargaining agreements dating back to 1993, the
> year that Sylvania purchased the Kentucky facility where the plaintiffs were
> employed.  After Sylvania took over the plant, the health insurance benefits for
> retirees fell into two categories, based on age and length of service.  The first
> category covered those employees who were under the age of 45 on the date of
> purchase and who were eligible to receive a percentage of the premium at
> company expense, based on their years of employment and capped at a certain
> amount set out in a separate schedule.  Those over the age of 45 on the purchase
> date were subject to the same eligibility formulas, but the amounts to which they
> were entitled were not capped.  As medical insurance costs began to rise
> precipitously in the decade following Sylvania's takeover of the plant, however,
> the company negotiated minor changes in the collective bargaining agreements
> with the UAW and, outside the contract, made certain other changes in the
> retirees' health insurance coverage.  Finally, in 2003, after failing to secure a
> change in the most recent contract, the company notified retirees that the
> distinction between the capped and uncapped premiums had been removed from
> the plan and that, henceforth, all health insurance premiums would be subject to a
> cap on amounts paid by the company.  In response, the plaintiffs brought suit,
> alleging that this unilateral change in benefits was in violation of the LMRA.

14

221 F. App'x at 421-22.  This description of retirement benefit scheme based on age and length of service roughly tracks the scheme in the instant case.  The *Cunningham* scheme provided that retirees over 45 with sufficient years of employment were entitled to receive uncapped company contributions to their health benefit premiums.  This echoes the amended pleading's assertion in the instant case that retirees with "95 or more points 'will receive a full Company contribution towards the cost of benefits described in Exhibit B-1.' " (Doc. # 14 ¶ 14.)

To support this assertion, Plaintiffs' amended complaint cites an excerpted copy of the 2000 Pension, Insurance and Service Award Agreement "attached here as 'Exhibit A.' " (Doc. # 14 ¶ 14.)  But no such exhibit is attached to the amended complaint.  The original complaint (Doc. # 1) did, however, include the exhibit.  Assuming arguendo that this Court can consider the original complaint's attachment when construing the assertions of the amended complaint, the Court must conclude that dismissal is warranted.

> The Sixth Circuit explained in Cunningham that the complaint in that case
>
> omitted any facts to support the bald conclusions that "[t]he insurance benefits conferred on all retirees by the Agreements are lifetime benefits to which plaintiffs and other retirees from the Winchester, Kentucky plant are entitled for the remainder of their lives" and that those benefits "cannot be unilaterally modified or terminated by the defendant without the consent of the retirees."

221 F. App'x at 422.  The court of appeals therefore concluded that "[b]ecause this proposition was pleaded without factual support of any kind, in our judgment the district court could have entered an order of dismissal for failure to state a claim under Rule 12(b)(6)."[2]  *Id.*

---

[2]  Because the district court under review in *Cunningham* had instead elected to consider extrinsic evidence, the court of appeals proceeded to treat the district court's disposition of the motion to dismiss under a Rule 56 inquiry.  421 F. App'x at 422-24.  This Court has declined to consider extrinsic material in regard to the Rule 12(b)(6) aspect of Defendants' motion to dismiss.

The amended complaint *sub judice* similarly asserts that "[u]nder the terms of the applicable collective bargaining agreements, [each named retiree (and in some instances his spouse)] are entitled to lifetime health care benefits, which defendants are obligated to provide." (Doc. # 14 ¶¶ 9, 10, 11.)  The amended pleading similarly asserts that class members

> became vested in retiree health care benefits and became entitled to receive lifetime health care benefits, and their spouses and surviving spouses became vested and entitled to receive health care benefits for life or until remarriage, as were the surviving spouses of certain employees who died while employed at the Plant.

(Doc. # 14 ¶ 15.)  Finally, echoing the language in *Cunningham*, the amended complaint concludes that "defendants violated these rights by shifting a large part of the costs of those benefits from defendants to Class Members, and have terminated or planned to terminate the benefits of those Class Members unable to pay or who otherwise do not pay the added costs imposed by defendants."  (Doc. # 14 ¶ 16.)

This Court concludes that, as in *Cunningham*, because Plaintiffs have plead propositions without factual support of any kind, dismissal under Rule 12(b)(6) is warranted.  Plaintiff's amended complaint quotes paragraph 11 of the agreement constituting Exhibit A.  Review of that agreement indicates that it does indeed state that qualifying retirees "will receive a full Company contribution towards the cost of the benefits described in this Exhibit B-1 . . . ."  (Doc. # 1-2, at 3 ¶ 11.)  But many of the conclusions Plaintiffs draw from that statement exceed factual allegations that this Court must accept as true in the Rule 12(b)(6) context.  Instead, Plaintiffs assert unsupported contentions including legal conclusions.

The relevant agreement paragraph does not present vesting or preclude monthly retiree premiums and the termination of benefits for failure to pay those premiums.  To reach that

16

conclusion would be to ignore both the language employed in the quoted sentence and other sentences in that paragraph that Plaintiffs have elected not to quote in their pleading.

Applying simple principles of contract construction to the key sentence upon which Plaintiffs rely–"Employees . . . will receive a full Company contribution towards the cost of the benefits described in this Exhibit B-1 . . . ."  (Doc. # 1-2, at 3 ¶ 11)–the Court must recognize that "full"  modifies "Company contribution" in the quoted sentence, not "cost."  What the sentence therefore says is that qualifying retirees will receive the total amount of the company's *potential* contribution toward the cost of health benefits, not that the company will cover the full cost of the benefits if the benefits exceed the total potential (i.e., capped) contribution.  "[A] full Company contribution" is consistent with caps.

This construction distinguishes the agreement language at issue here from those cases to which Plaintiffs direct this Court as containing "virtually identical CBA language [that] has been held to constitute a lifetime promise of retiree medical benefits . . . ."  (Doc. # 61 at 3 n.1)  For example, the language creating vested lifetime benefits in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW  v. Loral Corp.*, read as follows: "Employees who retire and who are eligible under the Loral Systems Group Retirement Plan for Bargaining Unit Employees for a pension (other than a deferred vested pension), shall receive the benefits described in this Section B . . . ." 873 F. Supp. 57, 63 (N.D. Ohio 1994), *aff'd*, 107 F.3d 11, 1997 WL 49077, at *2 (6th Cir. 1997) (unpublished table decision).  The distinction is obvious: that case's "shall receive the benefits" contrasts significantly with the instant case's "will receive a full Company contribution towards the costs of the benefits."  The former promises benefits, while the latter promises a contribution that

17

context places within a contingent retiree-contribution scheme; there is no guarantee here that the employer contribution is either unqualified or sufficient to cover the cost of benefits.[3]  The agreement in the case *sub judice* distinguishes this case from those in which a presumption of lifetime benefits–which the Sixth Circuit has described as the "*Yard-Man* inference"–proves correct.  *See Loral Corp.*, 1997 WL 49077, at *2.

Additionally, Plaintiffs neglect that the referenced agreement paragraph also states that "[e]mployees will be required to pay the balance of the health care contribution, as estimated by the Company annually in advance, for the benefits described in this Exhibit B-1.  Failure to pay the required medical contribution will result in cancellation of coverage."  (Doc. # 1-2, at 3 ¶ 11.)  The language of the paragraph in no way restricts the reference to "Employees" to mean only those retirees with less than the 95 qualifying points, which means that the agreement paragraph  contradicts the amended pleading's assertions of vesting of lifetime non-contingent benefits and that Defendants cannot require retiree contributions and terminate benefits for a failure to make such contributions.  It is beyond question that the agreement also permits termination for retirees with less than 95 points who fail to make their contributions.

The apparent inferences Plaintiffs (explicitly or implicitly) ask this Court to draw are unreasonable and unwarranted in light of the foregoing language.  There is thus no support for Plaintiffs' allegations behind the Count I § 301 claim or the Count II claim to enforce rights and

---

[3]  This same rationale distinguishes the lifetime-benefits case of *United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO, CLC v. Pirelli Armstrong Tire Corp.*, in which the documentation at issue provided that medical benefits "will be provided" without a termination provision, as opposed to a simple employer contribution scheme.  873 F. Supp. 1093, 1098 (M.D. Tenn. 1994).

enjoin plan violations.[4]  There is also no support for lifetime benefits that cannot be terminated. The attachment exhibit in fact contravenes Plaintiffs' pleading in this regard, undercutting the plausibility of their claim to relief.

This leaves Count III.  That count asserts a breach of fiduciary duty under ERISA, alleging according to Plaintiffs' own characterization that Defendants "breached their fiduciary duties by not administering the plans in a prudent manner, by failing to act for the exclusive purpose of providing benefits, and by wrongfully burdening participants and beneficiaries of the plans with monthly 'premiums,' causing hardship to the retirees and, in many instance, termination of health benefits."  (Doc. # 62, at 3 (tracking Amended Complaint, Doc. # 14 ¶ 34).) Even assuming arguendo that this is a viable cause of action under ERISA, Plaintiffs have failed to plead facts supporting imprudent conduct and a failure to act for the plan purpose.  Moreover, as described above, Plaintiffs have failed to plead facts supporting the wrongful imposition of retiree contributions.

The Court notes that the briefing includes Plaintiffs' assertion that Count III also targets the specific allegation that Defendants misled prospective retirees with promises that they would receive "no cost" health benefits during their retirement.  *See, e.g.*, Doc. # 62, at 3.  It is important to note, however, that *nowhere in the amended complaint* do Plaintiffs plead this allegation or how or what Defendants purportedly did in this regard, beyond a reference in Count I that the CBAs promised retirees health benefits.  It is a wholly unsupported factual contention derived from the briefing, and this Court is restricted under Rule 12(b)(6) to crediting the

---

[4]  The lack of a foundation for an ERISA violation renders Defendants' arguments as to redundant sources of relief under the various ERISA provisions moot.

amended pleading, not briefing.  Accordingly, Plaintiffs' belated contention is not sufficient to present a viable Count III upon which this Court could grant relief.

In summary, in addition to the 12(b)(1) attack on Count I, Plaintiffs' amended complaint also does not include "enough factual matter (taken as true) to suggest that" there is a foundation for Counts I, II, and III plausibly suggesting a right to relief.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Because the pleading's factual allegations are not "enough to raise a right to relief above the speculative level," *see id.*, the Court must dismiss the complaint under Rule 12(b)(6).[5]

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss.  (Doc. # 19.)  The Court therefore need not address Plaintiffs' moot motion for a preliminary injunction (Doc. # 40) and Defendants' moot motion to strike the jury demand (Doc. # 20).

The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[5] The Court therefore need not and does not address Defendants' moot alternative "preemption" ground for dismissal of Count I under Rule 12(b)(1).

20