UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TACKETT, *et al.*, | |
| PLAINTIFFS, | Case No. 2:07-cv-00126 |
| v. | Judge Gregory L. Frost |
| M&G POLYMERS USA, LLC, *et al.*, | Magistrate Judge Norah McCann King |
| DEFENDANTS. | |

FINAL PRETRIAL ORDER

This action came before the Court at a final pretrial conference held on March 28, 2011 at 12:00 p.m. pursuant to Rule 16 FRCP.

**I.    APPEARANCES:**

For Plaintiffs:
David M. Cook
Jennie G. Arnold
Laura L. Fischer
Cook Portune & Logothetis, LLC
22 West 9th Street
Cincinnati, Ohio 45202
Phone: (513) 721-0444
Fax: (513) 721-1178
dcook@econjustice.com
jarnold@econjustice.com
lfischer@econjustice.com

For Defendants:
Mark A. Knueve
Thomas H. Fusonie
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43215-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 719-5138
Email:  maknueve@vorys.com
        thfusonie@vorys.com

Philip A. Miscimarra
Deborah S. Davidson
Christopher A. Weals
John R. Richards
MORGAN, LEWIS & BOCKIUS, LLP
77 West Wacker Drive, 5th Floor
Chicago, Illinois 60601
Telephone: (312) 324-1000
Facsimile: (312) 324-1001
E-mail: pmiscimarra@morganlewis.com
        ddavidson@morganlewis.com
        cweals@morganlewis.com
        jrrichards@morganlewis.com

**II.** **NATURE OF ACTION AND JURISDICTION:**

    **A.** This is an action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), for breach of collective bargaining agreement, and under Section 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), to recover health care benefits allegedly due and to clarify and enforce rights under an employee welfare benefit plan.

    **B.** The jurisdiction of the Court is invoked under Title 28, United States Code, Section 1331.

    **C.** The jurisdiction of the Court is not disputed.

**III.** **TRIAL INFORMATION:**

    **A.** The estimated length of trial is ten days.

    **B.** Court Trial has been set for May 9, 2011 pursuant to the General Order on Trial Assignment.

**IV.** **AGREED STATEMENTS AND LISTS:**

    **A.** **General Nature of the Claims of the Parties:**

        1. Plaintiffs claim:

            Plaintiffs claim that pursuant to the Collective Bargaining Agreements and related Pension and Insurance Agreements in place at the Pt. Pleasant M&G facility, vested lifetime contribution-free health care benefits are due to retiree Class members of the Pt. Pleasant M&G facility. While Defendants maintain that "cap letters" limit their liability to pay retiree health costs, no cap letter was in place at Pt. Pleasant prior to the execution of LOU 2003-6.

>The company's consistent conduct in maintaining contribution-free retiree health care at all times prior to 2007, combined with M&G's bargaining history and M&G's calculations of its own FAS 106 liability for retiree health costs, demonstrate that health benefits were vested for life and were to be at no cost to retirees.
>
>Following the institution of a cap letter limiting company contributions for retiree health care benefits, memorialized in LOU 2003-6, those caps can apply only to persons retiring following the institution of the cap letter, and therefore company contribution limits cannot be applied retroactively to all retirees.  Further, the cap limits are annual limits, and cannot justifiably be instituted in the form of monthly limits.
>
>Class members are entitled to receive contribution-free retiree health care as promised in collectively bargained contracts executed by the parties.  Class members are entitled to future benefits as have been promised and such relief as will be necessary to make them whole for the losses incurred as a result of M&G's contractual breaches and failure to provide retiree health care.

2. Defendants claim:

   >Defendants maintain that Plaintiffs cannot satisfy their burden of proving there was a mutual agreement, by an employer and union, to confer upon any retirees a vested lifetime right to contribution-free medical benefits.  None of the applicable collective bargaining agreements gave members of the Plaintiff Class a vested lifetime right to contribution-free medical benefits.  To the contrary, each of the P&I Agreements, read as part of the integrated whole including the applicable cap letter agreements, establishes that the employer's obligation to fund retiree health benefits was capped and that retirees would ultimately be required to make above-cap contributions.  The Union's consistent pattern of conduct over fifteen years of bargaining confirms that no vested right to lifetime, contribution-free benefits existed.  When M&G Polymers USA, LLC ("M&G") purchased the Apple Grove facility in 2000, it assumed all of the collective bargaining rights and obligations of Shell Chemical Company, and became bound by and subject to the existing benefit plans and cap letters.
   >
   >Moreover, M&G and the United Steelworkers entered into a new, free-standing cap agreement effective August 9, 2003 ("LOU 2003-6"), which reconfirmed the existence of the employer caps and provided that retiree above-cap contributions would commence on January 1, 2006.  By its terms, LOU 2003-6 applies to existing and future retirees and gave M&G the right to begin collecting above-cap contributions in the form of monthly payments from retirees.

3

      3.      All other parties' claims: N/A

**B.    Uncontroverted Facts:**

The following facts are established by admissions in the pleadings or by stipulation of counsel:

1. M&G Polymers USA, LLC ("M&G") is a producer of polymer and related chemical products with a facility located in Apple Grove, West Virginia ("the Apple Grove facility," also known as the "Point Pleasant Plant").

2. The Goodyear Tire & Rubber Company ("Goodyear") owned the Apple Grove facility until November 20, 1992, when Shell Chemical Company, an affiliate of Shell Oil Company ("Shell"), purchased it.

3. Production, laboratory, and maintenance employees at the Apple Grove facility are represented by the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO ("USW") and its Local 644L.

4. Prior to 1995, production, laboratory, and maintenance employees at the Apple Grove facility were represented by the United Rubber Workers ("URW"). The URW merged with the USW in 1995.

5. Retiree Plaintiff Class Representatives H. Freel Tackett, Woodrow Pyles, and Harlan Conley (together with the Class members, the "Retiree Plaintiffs") were employed at the Apple Grove facility and were members of the collective bargaining unit represented by the Union.

6. Mr. Tackett retired on or about March 1, 1996. Mr. Pyles retired on or about January 1, 1996. Mr. Conley retired on or about August 1, 1998.

7. On November 6, 1991, Goodyear and Local 644 of the URW entered into a collective bargaining agreement ("CBA") effective November 6, 1991 to November 6, 1994.

8. On May 15, 1991, Goodyear and the URW and certain URW locals entered into a collectively bargained Pension, Insurance and Service Award Agreement effective May 15, 1991 to May 15, 1994 ("1991 Master P&I Agreement").

9. The 1991 Master P&I Agreement between Goodyear and the URW and certain URW locals included a side letter, "Letter G," dated May 15, 1991, dealing with retiree medical benefits ("1991 Letter G").

10. Goodyear created a Summary Plan Description ("SPD") that described the employee benefit programs applicable to hourly rated employees at the Apple Grove facility as of May 15, 1991.

11. Goodyear and Shell entered into an agreement dated December 18, 1992, pertaining to the employment by Shell of certain employees of Goodyear at the Apple Grove Facility (the "Employee Agreement").

12. On December 29, 1993, Shell formally adopted those Goodyear benefit plans that were previously in effect at Apple Grove for represented employees at the Apple Grove facility.

13. On July 20, 1994, Goodyear and the URW and certain URW locals entered into a collectively bargained Pension, Insurance and Service Award Agreement effective July 20, 1994 to July 20, 1997 ("1994 Master P&I Agreement")."

14. The 1994 Master P&I Agreement between Goodyear and the URW and certain URW locals contained a side letter, Letter G, dated July 20, 1994 ("1994 Letter G") dealing with retiree medical benefits.

15. On November 6, 1994, Shell and Local 644 of the URW entered into a CBA effective November 6, 1994 to November 6, 1997.

16. On May 9, 1997, Goodyear and the USW and certain USW locals entered into a collectively bargained Pension, Insurance and Service Award Agreement effective May 9, 1997 to May 9, 2003 ("1997 Goodyear Master P&I Agreement").

17. The 1997 Goodyear Master P&I Agreement between Goodyear and the USW and certain USW locals included a side letter, Letter H, dated May 9, 1997, dealing with retiree medical benefits ("1997 Letter H").

18. On November 6, 1997, Shell and the USW and Local Union 644 entered into a CBA effective November 6, 1997 to November 6, 2000 ("1997 CBA").

19. M&G purchased the Apple Grove facility from Shell effective June 1, 2000.

20. In connection with the purchase, M&G and Shell entered into a Human Resources Agreement dated June 1, 2000 ("HR Agreement").

21. In September 2000, M&G and the USW on behalf of Local 644L began bargaining for a potential extension of the 1997 CBA, which by its terms expired on November 6, 2000, and subsequently engaged in bargaining for a successor to the 1997 CBA.

22. On November 6, 2000, M&G and the USW and Local Union 644L entered into a CBA effective November 6, 2000 through November 6, 2003 ("2000-2003 CBA").

5

23. In September 2003, M&G and the USW on behalf of Local 644L commenced bargaining for a successor to the 2000-2003 CBA which was due to expire November 6, 2003. This bargaining encompassed more than 60 days of negotiations from September 2003 through August 2005 (the "2003-2005 Bargaining").

24. On August 9, 2005, M&G and the USW on behalf of Local Union 644L reached agreement on a new CBA effective August 9, 2005 to November 5, 2008 ("2005 CBA").

25. The 2005 CBA included LOU 2003-6, dealing with retiree medical benefits, which was signed by Union chief spokesperson Karen Shipley and Company representative Kimm A. Korber.

C. **Issues of Fact and Law:**

1. Contested Issues of Fact: The contested issues of fact remaining for decision are:

    DEFENDANTS:

    Pending a ruling on the motion for summary judgment, Defendants contend there are no contested issues of fact.

    PLAINTIFFS:

    (i) Did a cap letter exist prior to 2005 that applied to Local Union 644 at the Pt. Pleasant facility?

    (ii) Did a cap letter exist between Goodyear and Local Union 644 that was in effect in Pt. Pleasant in 1991?

    (iii) If a cap letter existed between Goodyear and Local Union 644 that was in effect in Pt. Pleasant in 1991, did that cap transfer to Shell?

    (iv) If a cap letter existed between Shell and the Local Union 644 that was in effect in Pt. Pleasant, did that cap transfer to M&G?

2. Contested Issues of Law:

    PLAINTIFFS:

    (i) Does a contract promising a "full company contribution" toward retiree health benefits which directly ties receipt of those benefits to pension eligibility create a vested right to retiree health benefits?

6

(ii) Were cap letters which were agreed to as part of the Master Goodyear P&I agreement incorporated into the Pt. Pleasant agreement at any time?

(iii) If no cap letter existed that applied to Local Union 644 prior to the enactment of LOU 2003-6, may that letter legally be applied retroactively to retirees whom had retired prior to M&G's ownership and operation of the Pt. Pleasant facility, and the existence of LOU 2003-6?

(iv) Can a cap letter that specifically references annual limits be applied in the form of monthly limits, where those limits have the actual effect of preventing continued participation by a substantial percentage of eligible retirees?

(v) Does enactment of monthly limits on retiree health contributions which has the effect of preventing continued participation by substantial numbers of eligible participants comport with vesting of those benefits as defined by the Sixth Circuit?

DEFENDANTS:

(i) Was there a mutual agreement between Goodyear or Shell and the Union to confer upon members of Subclass 1 a vested right to lifetime, contribution-free medical benefits?

(ii) Was there a mutual agreement between Shell and the Union to confer upon members of Subclass 2 a vested right to lifetime, contribution-free medical benefits?

(iii) Was there a mutual agreement between Shell or M&G and the Union to confer upon members of Subclass 3 a vested right to lifetime, contribution-free medical benefits?

(iv) Was there a mutual agreement between M&G and the Union to confer upon members of Subclass 4 a vested right to lifetime, contribution-free medical benefits?

(v) Was there a mutual agreement between M&G and the Union to confer upon members of Subclass 5 a vested right to lifetime, contribution-free medical benefits?

(vi) Did M&G have the legal right under LOU 2003-6 to collect above-cap contributions from both existing and future retirees and to terminate the medical benefits of any retirees (or their surviving spouses or eligible dependents) who failed to make their above-cap contributions?

    **D.**    **Witnesses**

1. In the absence of reasonable notice to opposing counsel to the contrary, Plaintiffs will call, or will have available at the trial:

   Randall Moore
   Karen Shipley
   Woodrow Pyles
   Freel Tackett
   Michael Harrington

   Plaintiffs may call:

   Harlan Conley
   Ron Hoover
   Brian Wedge

   Plaintiffs also reserve the right to call any witness listed on Defendants' witness list, or to call other rebuttal witnesses as needed.

2. In the absence of reasonable notice to opposing counsel to the contrary, Defendants will call, or will have available at trial:

   Kimm Korber
   Pam Cook

   Defendants may call:

   David Dick
   Jim Kruse
   Otto Allen Lee
   Robert Long
   Roger Sutphin
   Sam Stewart
   Dale Wunder

   Defendants also reserve the right to call any witness listed on Plaintiffs' witness list.

3. N/A.

4. In the event other witnesses are to be called at the trial, a statement of their names and addresses and the general subject matter of their testimony will be served upon opposing counsel and filed with the Court at least seven days prior to trial.

      5.      The parties each reserve the right to call to such rebuttal witnesses as may be necessary, without prior notice to the other party.

          (NOTE: Only witnesses listed in the Pretrial Order will be permitted to testify at the trial, except witnesses called solely for the purpose of impeachment or for good cause shown.)

Expert Witnesses: N/A

**E.**    **Exhibits:**

The parties' Joint Trial Exhibit List is attached as Appendix A. Plaintiffs' Trial Exhibit List is attached as Appendix B. Defendants' Trial Exhibit List is attached as Appendix C.

**F.**    **Depositions:**

Defendants will offer the testimony of the following witnesses by deposition/video tape if they are not called by Plaintiffs:

      Ronald Hoover
      Randall Moore
      Duane Lee
      Karen Shipley
      Brian Wedge

Defendants may offer the testimony of the following witnesses by deposition if they are not available for trial:

      David Dick
      Dale Wunder

Plaintiffs will offer the testimony of the following witnesses by deposition if they are not available for trial:

      David Dick
      Duane Lee
      Kimm Korber
      Ron Hoover

Plaintiffs may offer the testimony of the following witnesses by deposition if they are not available for trial:

      Jim Kruse
      Duane Lee
      Dale Wunder

    G.    **Discovery**

        Discovery has been completed except that the parties have not completed the stipulation identifying the authors of certain handwritten bargaining notes.

        The parties continue to confer in an attempt to reach resolution on stipulations regarding handwritten bargaining notes.

    H.    **Miscellaneous Orders:**

        1.    Set forth any orders not properly includable elsewhere or

        2.    The foregoing stipulations and statements are amended at the final pretrial conference as follows:

**V.**    **MODIFICATION**

This final pretrial order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel or on motion of the Court.

**VI.**    **SETTLEMENT EFFORTS**

The parties have made a good faith effort to negotiate a settlement.

**VII.**    **ADDITIONAL ACTION TAKEN**

/s/ Gregory L. Frost
GREGORY L. FROST
United States District Judge

_____
Counsel for Plaintiffs

/s/ John R. Richards
Counsel for Defendants