RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0014p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

HOBERT FREEL TACKETT, et al.,
           *Plaintiffs-Appellees*,

*v.*

M&G POLYMERS USA, LLC, et al.,
           *Defendants-Appellants*.

No. 12-3329

On Remand from the Supreme Court of the United States.
No. 2:07-cv-126—Gregory L. Frost, District Judge.

Argued: October 6, 2015

Decided and Filed: January 21, 2016

Before: COLE, Chief Judge; KEITH and MERRITT, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** K. Winn Allen, KIRLAND & ELLIS LLP, Washington, D.C., for Amicus Curiae ERISA. Allyson N. Ho, MORGAN, LEWIS & BOCKIUS LLP, Dallas, Texas, for Appellants. Julia Penny Clark, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees. **ON BRIEF:** Allyson N. Ho, John C. Sullivan, MORGAN, LEWIS & BOCKIUS LLP, Dallas, Texas , Christopher A. Weals, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellants. Julia Penny Clark, Jeremiah A. Collins, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., David M. Cook, Jennie G. Arnold, COOK & LOGOTHETIS, LLC, Cincinnati, Ohio, for Appellees. K. Winn Allen, KIRLAND & ELLIS LLP, Washington, D.C., Douglas A. Darch, BAKER & MCKENZIE LLP, Chicago, Illinois, Bobby R. Burchfield, KING & SPALDING LLP, Washington, D.C., for Amici Curiae.

1

## OPINION

COLE, Chief Judge.  This case returns to us for the third time, this time on remand from the Supreme Court, which abrogated the primary precedent on which our prior decisions relied. *See M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) (vacating *Tackett v. M&G Polymers USA, LLC*, 733 F.3d 589 (6th Cir. 2013) ("*Tackett II*"); abrogating *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983)).  On remand, we were directed to construe the parties' agreements using "ordinary principles of contract law."  *M&G Polymers*, 135 S. Ct. at 937.

Because prior factual determinations as to the parties' agreements were made in the "shadow of *Yard-Man*," we remand to the district court to make these determinations, in the first instance, in light of the Supreme Court's holding.

### I. BACKGROUND[1]

#### A. Factual Background

Plaintiffs-Appellees are Ohio residents, retirees, and spouses of retirees ("Retirees") from a plant owned by Defendant-Appellant M&G Polymers USA, LLC ("M&G").  From 1991 to 2005, the Retirees entered into several collective bargaining agreements ("CBA") with M&G and its predecessors, which included Pension and Insurance Agreements ("P&I") outlining retiree health care benefits (collectively, "Agreements").  The P&Is provide that the employer will make "a full Company contribution towards the cost of [health care] benefits" for certain retirees.  In December 2006, M&G announced that Retirees would, for the first time, be required to contribute to their health care costs or risk being dropped from the plan.

#### B. Procedural History

Retirees filed a class action suit against M&G and its health care plans (collectively, "Defendants") alleging that the Agreements under which they retired granted a vested right to

---

[1]We presume the reader is familiar with this case, which was detailed in *Tackett II,* 733 F.3d at 593–95, *vacated and remanded*, 135 S. Ct. 926 (2015).  Therefore, we only provide an abbreviated background here.

No. 12-3329            *Tackett, et al. v. M&G Polymers USA, et al.*            Page 3

lifetime contribution-free health care benefits.  Defendants argued certain side letters or "cap letters" established caps they would pay towards Retirees' cost of benefits.  Defendants further argued Retirees had always been expected to contribute to the cost of their health care benefits, but M&G never required them to do so until 2006.

Initially, the district court dismissed the complaint, finding the Agreements and cap letters foreclosed Retirees' claims based on "simple principles of contract construction." *Tackett v. M&G Polymers USA, LLC*, 523 F. Supp. 2d 684, 695 (S.D. Ohio 2007) ("*Tackett 2007*").)  On appeal, we held "[i]n determining whether the parties intended health care benefits to vest, this Court applies the principles first described in *Yard–Man*." *Tackett v. M&G Polymers USA, LLC*, 561 F.3d 478, 489 (6th Cir. 2009) (per curiam) ("*Tackett I*").  In applying *Yard-Man* to the limited language at issue in the P&I, we found that the Agreements evinced an intent to vest Retirees' with lifetime contribution-free health care benefits.  *Id.* at 489–91.

> First, the "full Company contribution" language suggests that the parties intended the employer to cover the full cost of health-care benefits for those employees meeting the age and term-of-service requirements.  Keeping in mind the context of the labor-management negotiations identified in *Yard–Man*, [716 F.2d 1476 (6th Cir.1983)] we find it unlikely that Plaintiff USW would agree to language that ensures its members a "full Company contribution," if the company could unilaterally change the level of contribution.  The CBA has no limitation on the amount of a company contribution and if the Defendants' argument were accepted, the company presumably could lower the contribution to zero without violating this language.  Such a promise would be illusory.
>
> Second, the limiting language, "[e]mployees will be required to pay the balance of the health care contribution," follows the provision requiring contributions by those retirees who had not attained the requisite seniority points.  From the placement of this language, we can reasonably infer that it did not apply to all retirees, but only to those retirees who had not attained the requisite seniority points.
>
> Third, the collective bargaining agreement tied eligibility for health-care benefits to pension benefits.  This is another factor indicating that the parties intended the health care benefits to vest upon retirement.

*Id.* at 490.

On remand, the district court held that Retirees had a vested right to contribution-free health care benefits based on the inference in *Yard-Man*. *See Tackett v. M&G Polymers USA,*

No. 12-3329  *Tackett, et al. v. M&G Polymers USA, et al.*  Page 4

*LLC*, No. 2:07-CV-126, 2011 WL 3438489, at *13−14 (S.D. Ohio Aug. 5, 2011) ("*Tackett Bench Trial*"). Following a bench trial, the district court held that the cap letters did not apply to Retirees, *id.* at *19, and granted a permanent injunction reinstating Retirees' lifetime contribution-free health care benefits, *Tackett v. M&G Polymers USA, LLC*, 853 F. Supp. 2d 697, 698–99 (S.D. Ohio 2012).

When Defendants appealed, we cited the *Yard-Man* contract interpretation principles embraced by *Tackett I*.

> (1) "[L]ook to the explicit language," (2) evaluate that language "in light of the context" that led to its use, (3) "interpret each provision . . . as part of the integrated whole," (4) construe each provision "consistently with the entire document and the relative positions and purposes of the parties," (5) construe the terms "so as to render none nugatory" and to "avoid illusory promises," (6) look to other words and phrases in the document to resolve ambiguities, and (7) "review the interpretation . . . for consistency with federal labor policy."

*Tackett II*, 733 F.3d at 599 (quoting *Tackett I,* 561 F.3d at 489 n.7 (quoting *Yard-Man,* 716 F.2d at 1479–80)). We found that the district court did not clearly err in finding the cap agreements inapplicable to Retirees. *Tackett II*, 733 F.3d at 597. As a result, we affirmed the district court's finding that Retirees' lifetime contribution-free health care benefits had vested. *Id.* at 600.

> The qualifying language in *Tackett I* implied that the CBA language, though indicating intent to vest, contained enough ambiguity to permit examination of such additional evidence [as the cap letters].
>
> The district court's presumption that, in the absence of extrinsic evidence to the contrary, the agreements indicated an intent to vest lifetime contribution-free benefits was in accordance with both *Tackett I* and the CBA language promising a "full contribution" to qualifying employees. To the extent that vesting was presumed, it was not the district court that, *sua sponte*, shifted the burden of proof, but rather the language of the CBA and its linkage of health care benefits to pension benefits that led to the conclusion that retirees had a vested right to health care benefits and, in the absence of evidence to the contrary, a vested right to contribution-free health care benefits. Having reached the conclusion that benefits were vested, it was then reasonable for the district court to conclude that those benefits could not be bargained away without retiree permission.

*Id.* (internal citation omitted).

On certiorari, the Supreme Court abrogated *Yard-Man* and its progeny, finding that *Yard-Man* required us to analyze CBAs with a "thumb on the scale" in favor of vesting. *M&G Polymers*, 135 S. Ct. at 935; *id.* at 938 (Ginsburg, J., concurring). On remand, the Supreme Court directed us to review the parties' agreements and determine whether benefits vested using "ordinary principles of contract law." *M&G Polymers*, 135 S. Ct. at 937 (unanimous op.).

## II.     ORDINARY PRINCIPLES OF CONTRACT LAW

Our review begins with the Supreme Court's decision in *M&G Polymers*, which unanimously concluded we should review the Agreements applying "ordinary principles of contract law." *See id.* at 935–37; *id.* at 938 (Ginsburg, J., concurring). Such "ordinary principles" include the following:

- [A]s with any other contract, the parties' intentions control.

- Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.

- Although a court may look to known customs or usages in a particular industry to determine the meaning of a contract, the parties must prove those customs or usages using affirmative evidentiary support in a given case.

- [T]he written agreement is presumed to encompass the whole agreement of the parties.

- Courts [should] avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract. . . . [A] promise that is "partly" illusory is by definition not illusory.

- [C]ourts should not construe ambiguous writings to create lifetime promises. . . . [C]ontracts that are silent as to their duration will ordinarily be treated not as "operative in perpetuity" but as "operative for a reasonable time."

- [T]raditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation.

No. 12-3329           *Tackett, et al. v. M&G Polymers USA, et al.*           Page 6

- Contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.

- When a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.

*M&G Polymers*, 135 S. Ct. at 933–37 (unanimous op.) (citations omitted). The Court did not purport to discuss *all* of the ordinary principles of contract law. *See id.* at 935–37 (noting only those ordinary contract principles that *Yard-Man* violated). Justice Ginsburg's concurrence identified additional "ordinary principles of contract law":

- Under the cardinal principle of contract interpretation, the intention of the parties, to be gathered from the whole instrument, must prevail.

- [W]hen the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties. . . . [F]or example, the parties' bargaining history.

- No rule requires "clear and express" language in order to show that parties intended health-care benefits to vest.

- Constraints upon the employer after the expiration date of a collective-bargaining agreement . . . may be derived from the agreement's "explicit terms," but they may arise as well from implied terms of the expired agreement.

*M&G Polymers*, 135 S. Ct. at 937–38 (Ginsburg, J., concurring) (citations omitted).[2] Still, the parties identified additional "ordinary principles of contract law" that may be relevant here, including that contracts incorporate existing law, *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991); *see also* 11 Williston on Contracts § 30:19; 3 Corbin, Contracts § 551, and that subsequent changes in the law are not incorporated unless the contract so

---

[2]The *M&G Polymers* majority did not purport to disregard or disavow all other ordinary principles of contract law that it did not expressly identify. Reliance on Justice Ginsburg's concurrence is appropriate in this instance because it identifies other principles of contract law. *Compare J.P. v DeSanti*, 653 F.2d 1080, 1089 (6th Cir. 1981) (relying on concurrences in two Supreme Court cases to "assure that there would be no misunderstanding" as to the meaning of the Court's opinion and to remove "any doubt about the Court's analysis"), *with Alexandar v. Sandoval*, 532 U.S. 275, 285 n.5 (2001) (noting that a concurrence that is merely "consistent with" the majority, but not "coextensive," cannot "force the majority to address a point they found it unnecessary (and did not wish) to address, under compulsion of [a] new principle that silence implies agreement.").

No. 12-3329 *Tackett, et al. v. M&G Polymers USA, et al.* Page 7

indicates, *Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.*, 706 F.3d 733, 738 (6th Cir. 2013) (quoting 11 Williston on Contracts § 30:23).

Importantly, the Court rejected *Yard-Man*'s inferences in favor of retirees, but also declined to adopt an "explicit language" requirement in favor of companies. *See M&G Polymers*, 135 S. Ct. at 937 (unanimous op.), 938 (Ginsburg, J., concurring); *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 207 (1991) ("[A] collective-bargaining agreement [may] provide[] in *explicit* terms that certain benefits continue after the agreement's expiration," but nevertheless, "constraints upon the employer *after the expiration date* of a collective-bargaining agreement . . . may arise as well from the express or *implied* terms of the expired agreement itself.") (emphasis added).[3] Thus, while the Supreme Court's decision prevents us from presuming that "absent specific durational language referring to retiree benefits themselves, a general durational clause *says nothing* about the vesting of retiree benefits," we also cannot presume that the *absence* of such specific language, by itself, evidences an intent *not* to vest benefits or that a general durational clause says *everything* about the intent to vest. *See M&G Polymers*, 135 S. Ct. at 935, 937 (unanimous op.) (noting that *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) and *Yard-Man* were decided using different principles of contract construction as to the requirement for "clear and express" language, but falling short of endorsing or denouncing *Sprague*). We need not decide here whether *Sprague*'s "clear and express language" requirement comports with ordinary principles of contract law.

### III. VESTING UNDER THE AGREEMENTS

We now consider whether the documents that make up the Agreements here vest Retirees with lifetime contribution-free health care benefits using ordinary principles of contract law.

#### A. Applicability of Cap Letters

Defendants argued extensively in their briefs that the cap letters are part of the Agreements or can serve as extrinsic evidence of dealings with Retirees. Retirees disagree.

---

[3]Though Retirees acknowledged that the Agreements lack clear and express language vesting benefits, the Supreme Court did not direct judgment on this issue.

No. 12-3329  *Tackett, et al. v. M&G Polymers USA, et al.*  Page 8

"Whether a given document is part of a written contract is a question of fact." *E.g.*, *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467, 473 (6th Cir. 2001).

Though Defendants did not identify any particular *Yard-Man* inferences that influenced the district court's conclusions, they argue that *Tackett Bench Trial* was decided in the "shadow of *Yard-Man*." On its face, the district court determined, independent of *Yard-Man* or its inferences, that the cap letters were not part of the Agreements. *See Tackett II*, 733 F.3d at 597; *Tackett Bench Trial*, 2011 WL 3438489, at *14–19. However, given the district court's stated confusion over our *Yard-Man* instruction, *see Tackett Bench Trial*, 2011 WL 3438489, at *13−14, the extent to which the district court was influenced by *Yard-Man* remains unclear. It is similarly unclear whether the parties were influenced by *Yard-Man* during the trial. For example, they may not have introduced certain evidence or arguments because of *Yard-Man*'s mandate. Now that *Yard-Man* has been abrogated, additional evidence or arguments may be relevant to an inquiry under ordinary contract principles. Thus, we remand so the district court may determine whether the cap letters, or other documents, are part of the Agreement or may otherwise serve as extrinsic evidence.

### B. Reverting to *Tackett 2007*

Defendants also argue this court should reinstate the district court's initial decision dismissing the complaint, because it rested on "simple principles of contract construction." *See Tackett 2007*, 523 F. Supp. 2d at 695. However, *Tackett 2007* largely relied on the cap letters and did not consider other evidence submitted by Retirees. *See Tackett 2007*, 523 F. Supp. 2d at 689–90. Once that evidence was considered, the district court held that the cap letters did not apply to Retirees. *See Tackett Bench Trial*, 2011 WL 3438489, at *14–19. In light of our decision to remand, we anticipate that the district court will consider any admissible evidence that is probative of the Supreme Court's direction to construe the parties' Agreements under "ordinary principles of contract law."

### IV. CONCLUSION

For the foregoing reasons, we remand so the district court can decide, among other things, outside the "shadow of *Yard-Man*," (1) what documents make up the parties'

No. 12-3329  *Tackett, et al. v. M&G Polymers USA, et al.*  Page 9

Agreements; (2) whether reference to extrinsic evidence is appropriate; and (3) whether the Agreements, and any extrinsic evidence that may be considered, vests with Retirees lifetime contribution-free health care benefits. The district court should use ordinary principles of contract law to answer these questions, without a "thumb on the scale" in favor of *either* party.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 12-3329

HOBERT FREEL TACKETT, et al.,

    Plaintiffs-Appellees,

v.

M&G POLYMERS USA, LLC,

    Defendants-Appellants.

**FILED**
Jan 21, 2016
DEBORAH S. HUNT, Clerk

Before: COLE, Chief Judge; KEITH and MERRITT, Circuit Judges.

**JUDGMENT**

On Remand from the Supreme Court of the United States.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the case is REMANDED to the district court for further considerations set forth in the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: January 21, 2016

Mr. Kenneth Winn Allen
Mr. Christopher Landau
Kirkland & Ellis
655 Fifteenth Street, N.W.
Washington, DC 20005

Ms. Jennie G. Arnold
Ledbetter Parisi
9240 Market Place Drive
Miamisburg, OH 45342

Mr. Bobby Roy Burchfield
King & Spalding
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006

Ms. Claire W. Bushorn
Mr. David M. Cook
Cook & Logothetis
22 W. Ninth Street
Cincinnati, OH 45202

Ms. Julia Penny Clark
Mr. Jeremiah A. Collins
Bredhoff & Kaiser
805 Fifteenth Street, N.W.
Suite 1000
Washington, DC 20005

Mr. Douglas A Darch
Baker & McKenzie
300 E. Randolph Street
Suite 5000
Chicago, IL 60601

Ms. Allyson Newton Ho
Mr. John Clay Sullivan
Morgan, Lewis & Bockius
1717 Main Street
Suite 3200
Dallas, TX 75201

Mr. Christopher Alan Weals
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Re: Case No. 12-3329, *Hobert Tackett, et al v. M&G Polymers USA, LLC, et al*
Originating Case No. : 2:07-CV-126

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Dixie Aerni
Deputy Clerk

Enclosures

Mandate to issue.